UNITED STATES, Appellee,

v.

Private E1 Timothy S. FOGARTY, 256–57–2699, United States Army, Appellant.

ACMR 9101203.

U.S. Army Court of Military Review.

26 Oct. 1992.

For Appellant: Captain Kurt J. Mayer, JAGC (argued); Captain Robin N. Swope, JAGC (on brief).

For Appellee: Captain Glenn L. Kirschner, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Timothy W. Lucas, JAGC, Captain Gregory T. Baldwin, JAGC (on brief).

Before CREAN, WERNER, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

GONZALES, Judge:

Pursuant to his pleas, the appellant was found guilty on 30 May 1991, of absence without leave, larceny, forgery (11 specifications), adultery, and communicating a threat, in violation of Articles 86, 121, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 921, 923, and 934 (1982) [hereinafter UCMJ]. A military judge, sitting as a general court-martial, sentenced the appellant to a bad-conduct discharge, confinement for twenty-six months, and forfeiture of $500.00 pay per month for twenty-six months. In compliance with the terms of a pretrial agreement, the convening authority reduced the term of confinement to thirteen months, and, in addition, accepted the recommendation of the military judge by suspending execution of the bad-conduct discharge for one year.

On appeal, the appellant asserts the following errors: (1) his pleas of guilty to communicating a threat were improvident because the appellant did not express a present determination or intent to injure; (2) the military judge erred in accepting the appellant's pleas of guilty to adultery because unsworn statements made by the appellant during the sentencing portion of the trial raised the possibility of the defense of mistake of fact; and (3) the appellant is entitled to administrative credit for being subjected to unlawful pretrial punishment. As to all three assignments of error, we disagree.

### I. Pretrial Confinement Conditions

The appellant spent seventy-two days, from 21 March 1991 to 30 May 1991, in pretrial confinement at the Marine Corps Depot Brig at Parris Island, South Carolina. Soldiers ordered into pretrial confinement from Fort Stewart, Georgia, were confined in this Brig pursuant to a six-year interservice support agreement, dated 7 November 1989, between the convening authority and the commanding general of the Marine Corps Depot. A military magistrate approved the appellant's pretrial confinement on 22 March 1991. *See* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 305(i) [hereinafter R.C.M.]; Army Reg. 27–10, Legal Services: Military Justice, para. 9–5 (22 Dec. 1989).

The Parris Island Brig is a very small facility with a limited staff where the need to maintain the security and order of the general population is the primary consideration for its day-to-day operating procedures, arrangements, and schedules. The Brig has only two open bay rooms to maintain the general population of both pretrial detainees and sentenced prisoners. Only one of the open bay rooms has latrine and shower facilities. Consequently, that room is used as a dormitory for the general population, while the other is used by the general population as a multi-purpose room for recreational and television (TV) privileges, smoke breaks, and visits. The Brig also has a few individual cells. Only senior enlisted personnel (E4 and above) are required to submit a request in writing if they desire to be housed with the general population instead of remaining segregated in a cell. The Brig has no dining facility, hence the general population is marched to each meal to the nearest dining facility. The cadre was composed of nine Marine full-time guards, and one Army part-time guard, who was assigned to the Brig during the appellant's last fifteen days of pretrial confinement. The staff was responsible for operating the facility and managing the confinees twenty-four hours a day. During the time the appellant was at the Brig, the general population averaged thirty prisoners, five of whom were Army soldiers.

The appellant entered the Brig as a Private E1 and, along with the other pretrial detainees, slept in the same open bay room; used the same laundry, shower, and latrine facilities; ate in the same dining facility; worked on the same details inside and outside the Brig; marched to the mess hall and performed physical training (PT) in the same formations; and, used the same recreational areas as sentenced prisoners. The pretrial detainees were distinguished from sentenced prisoners by their dress:

pretrial detainees wore battle dress uniforms (BDUs) with road guard vests and black label name badges, while sentenced prisoners wore orange jump suits with blue label name badges. The two groups were physically separated, albeit sometimes by as little as three feet, in mess hall seating and sleeping arrangements. At times, they also were separated on work details outside the Brig.

The appellant was provided with a warm, clean, dry place to live. He was able to take a shower every day and he was provided health and comfort items. His sleeping hours were from 2100 to 0500 hours. His working hours were from 0730 to 1030 hours in the morning and from 1300 to 1530 hours in the afternoon. While on a work detail outside the Brig, he was given a fifteen-minute break every hour; when the temperature was at ninety or more degrees, he was given a ten-minute break every twenty minutes. His recreation/TV/free time was from 1700 to 2030 hours. On Friday and Saturday nights, his TV/free time was extended to 2300 hours, with reveille at 0600 hours. the following morning. Organized PT was held three mornings per week at 0515 hours and included seven exercises and a mile-and-a-half run at a pace as fast as the slowest person in the formation. "Contact" visiting hours were scheduled on Saturdays and Sundays from 1300–1500 hours. The appellant was permitted one ten-minute phone call per week to anyone and unlimited phone calls to his defense counsel.

While the appellant was in confinement, he was the target of several disparaging remarks by guards concerning some of the offenses and his branch of service. There were comments pertaining to the offenses such as, "Was that piece of ass you got from that married woman worth the trouble you're in now?" and, "I can't believe you stole from your own friend, a fellow MP." These remarks were uttered primarily by Specialist (SPC) K, the single Army guard at the facility, who personally knew the appellant and who was aware of the appellant's charges because both were assigned to the same military police unit at Fort Stewart. There also were personal comments from the Marine Corps guards comparing standards and attitudes of the Army with those of the Marine Corps such as, "The Army has a lot of overweight people. They are an embarrassment to this country," and "Any man who would have sex with a married woman, wouldn't live very long in the Marine Corps. You are a disgrace."

## II. Waiver

■ When the appellant, for the first time on appeal, asserted that he had been subjected to illegal pretrial punishment in violation of Article 13, UCMJ, this Court ordered the record of trial returned to The Judge Advocate General for a limited hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A.1967), concerning the following questions:

1. Whether the commingling of the appellant with sentenced prisoners constituted pretrial punishment?

2. Whether the appellant was ridiculed by his guards for either his offense or for his branch of service (Army), and if so, whether such ridicule constituted an impermissible public denunciation and degradation of the appellant?

3. Whether the conditions at the Parris Island Marine Depot Brig at the time of the appellant's incarceration were so onerous as to violate the proscription of Article 13, UCMJ?

The military judge, after making specific findings of fact, answered all of the above questions in the negative. Based on our review of the record of trial, as well as the additional evidence presented at the *DuBay* hearing, we hold that the appellant's failure to raise the issue of illegal pretrial confinement at trial waived this issue on appeal. *United States v. Walker*, 27 M.J. 878, 882 (A.C.M.R.), *aff'd*, 28 M.J. 430 (C.M.A.1989).

The failure to raise the issue of pretrial punishment at trial usually waives the issue on appeal. *United States v. Cruz*, 25 M.J. 326 (C.M.A.1987); *United States v. Newberry*, 35 M.J. 777 (A.C.M.R.1992); *Walker*, 27 M.J. at 880–81; *United States v. Huelskamp*, 21 M.J. 509 (A.C.M.R.1985);

*United States v. Martinez*, 19 M.J. 744 (A.C.M.R.1984), *pet. denied*, 21 M.J. 27 (C.M.A.1985). Occasionally, this Court and the Court of Military Appeals have permitted appellants to raise this issue for the first time on appeal. *United States v. Johnson*, 41 C.M.R. 49 (C.M.A.1969); *United States v. Latta*, 34 M.J. 596 (A.C.M.R. 1992); *United States v. Peacock*, 19 M.J. 909 (A.C.M.R.), *pet. denied*, 20 M.J. 205 (C.M.A.1985); *United States v. Travier*, 42 C.M.R. 427 (A.C.M.R.1970).

We agree, however, with the former line of cases which held that the failure to raise pretrial punishment at trial will waive the issue on appeal. We find that the Court of Military Appeals in *United States v. Palmiter*, 20 M.J. 90 (C.M.A.1985), set forth the test for waiver which this Court must follow. In *Palmiter*, Judge Cox laid out the actions a pretrial confinee should pursue if he believes that he is being subjected to unlawful pretrial punishment at a confinement facility:

> If, after the initial hearing and determination by the military magistrate, a confinee believes that he is being punished by conditions in the confinement facility, he should apply for relief from these conditions to the magistrate who initially approved his pretrial confinement. Should he be denied relief by that magistrate, the confinee should appeal to the convening authority or to the military judge depending on the state of the proceedings at the time. It is possible that resort to the extraordinary-writ jurisdiction of the appellate courts would be appropriate in extreme cases. Just as with the decision to continue pretrial confinement, review of the conditions of such confinement should be an ongoing process to limit the duration of any violation which might arise following the initial incarceration. The failure to raise this issue while undergoing pretrial confinement will be strong evidence that the confinee was not illegally punished prior to trial.

*Palmiter*, 20 M.J. at 97 (footnote omitted).

The appellant took none of the actions required by *Palmiter* to raise unlawful pretrial punishment at the Marine Corps Depot Brig. He did not apply for relief from the magistrate who initially approved his pretrial confinement. He did not seek relief from the convening authority, the military judge, or this Court. In addition, the appellant never raised this matter with either his counselor at the Brig during weekly sessions, or with the officer from the appellant's unit who made weekly command visits during the entire period of pretrial confinement. The trial defense counsel's affidavit, Government Appellate Exhibit 3, indicates that the appellant discussed this issue with his defense counsel and, after receiving the benefit of his advice, consciously chose not to raise this issue at trial. Finally, immediately after trial, the appellant indicated only one ground for appellate relief on his Appellate Defense Counsel Representation Form—"undue severity of the sentence."

The first time the appellant mentioned any aspect of his pretrial confinement with any official was one month after trial in his R.C.M. 1105 submission to the convening authority, where he stated:

> I have been in confinement for four months, three of which was served in Pre–Trial at Parris Island, SC. I was housed and worked on heavy labor working parties along side the convicted prisoners. Sir, I direct you to defense exhibit c which is a statement rendered by the confinement facility pertaining to my performance for the past three months as well as favorable recommendations to remain in service.

It is clear from reading the remainder of his letter to the convening authority, that the appellant was seeking clemency in the form of a suspended bad-conduct discharge, rather than raising the issue of unlawful pretrial punishment and requesting administrative confinement credit. Therefore, under these circumstances, we hold that the doctrine of waiver applies to this case.

### III. No Violation of Article 13, UCMJ

Assuming *arguendo* that waiver should not be applied in this case, we are convinced that there was no condition of pre-

trial confinement of such serious portions that equated to a violation of Article 13, UCMJ. *United States v. Johnson*, 41 C.M.R. 49, 50 (C.M.A.1969).

Article 13, UCMJ, states:

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

The Supreme Court provided us with the following framework to evaluate conditions of pretrial confinement for punishment or penalty:

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal— if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell v. Wolfish*, 441 U.S. 520, 538–39, 99 S.Ct. 1861, 1873–74, 60 L.Ed.2d 447, 469 (1979).

The Court of Military Appeals adopted this standard for the military in *United States v. Palmiter*, 20 M.J. at 95. Using *Wolfish* and *Palmiter* as our guide, we will review the three questions the *DuBay* hearing addressed.

### A. Commingling of the Appellant With Sentenced Prisoners

Commingling *per se*, without more, does not constitute pretrial punishment. *Palmiter*, 20 M.J. at 96. The issue is not solely whether the appellant, as a pretrial confinee, was commingled with sentenced prisoners, but, instead, whether

any condition of his pretrial confinement was intended by officials to be punishment. *Id.* at 95. Whether a particular condition amounts to pretrial punishment is a matter of intent which is determined by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective." *Id.* (citing *Bell v. Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.)

Officials at a confinement facility must be able to take measures to maintain security and order in their facility. Conditions that are reasonably related to the facility's interest in maintaining security do not, without more, constitute punishment, even if some of these conditions may have been unpleasant to the appellant. *Wolfish*, 441 U.S. at 540, 99 S.Ct. at 1874, 60 L.Ed.2d at 469; *see United States v. James*, 28 M.J. 214 (C.M.A.1989). Furthermore, conditions that are reasonably related to legitimate governmental objectives in maintaining security and order and operating a confinement facility in a manageable fashion are peculiarly within the province and professional expertise of confinement officials. In the absence of substantial evidence in the record to indicate that officials have exaggerated their response to these objectives, courts should ordinarily defer to their expertise in such matters. *Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). .

We find that the evidence establishes that the commingling of pretrial detainees with sentenced prisoners occurred because of the physical limitations of the Brig, the limited manpower resources to operate the Brig, and the need to maintain security and order of the general population inside and outside of the Brig. It is apparent to us in this case that there was no intent by confinement officials to punish the appellant by commingling him with sentenced prisoners, but rather it was done to ensure the orderly and efficient operation of the confinement facility. Accordingly, we hold that the commingling that did occur did not constitute pretrial punishment, but was a condition that was reasonably

related to a legitimate governmental purpose, such as, the orderly operation of the confinement facility.

### B. Ridicule by Confinement Facility Guards

The Court of Military Appeals and this Court have unequivocally condemned conduct by those in positions of authority that will result in needless military degradation, or public denunciation or humiliation of an accused. *See United States v. Villamil–Perez*, 32 M.J. 341 (C.M.A.1991); *United States v. Cruz*, 25 M.J. 326 (C.M.A.1987); *United States v. Latta*, 34 M.J. 596 (A.C.M.R.1992); *United States v. Hatchell*, 33 M.J. 839 (A.C.M.R.1991); *United States v. Fitzsimmons*, 33 M.J. 710 (A.C.M.R. 1991). Based on our review of the comments that were made to the appellant, we find that none were of such a nature to constitute a violation of Article 13, UCMJ.

■ Comparing the conduct in each of the above-cited cases to the statements made by SPC K, none were stated by or sanctioned by a commander, first sergeant, or similar official at the confinement facility. None were made in public outside the Brig before soldiers who were not prisoners. None were stated contemporaneously with the stripping of military insignia from the appellant's uniform. While SPC K's comments were upsetting to the appellant, his remarks were made at a personal, rather than an official, level. Additionally, SPC K was counseled by a senior member of the Marine Corps cadre concerning his remarks as soon as it was brought to his attention, and the comments stopped. We further find that the remarks were not sufficient in their content or context to constitute an impermissible public denunciation and degradation of the appellant in violate Article 13, UCMJ.

■ Turning to the comments from the Marine guards, these remarks are typical of those that reflect the rivalry between members of the two services as to which has better soldiers and higher standards. No doubt the comments that were directed towards the appellant were annoying or irritating, but they also did not rise to the level of an Article 13, UCMJ, violation.

### C. Conditions at the Parris Island Marine Depot Brig

■ In *United States v. Daniels*, 23 M.J. 867 (A.C.M.R.1987), this Court examined the pretrial conditions of an accused who was subjected to seventy-one days of pretrial confinement in the Cumberland County, North Carolina, jailhouse. This Court found that though the conditions at the Cumberland County facility lacked some of the amenities required by Army Regulation 190–47, they did not violate Article 13, UCMJ. It is clear to us from the record in the instant case that the conditions the appellant was subjected to for seventy-two days in the Marine Corps Depot Brig certainly met the standards of Article 13, UCMJ, or any other penal standard. Under these circumstances, we find that the appellant was not subjected to more onerous or rigorous conditions at the Brig than was necessary to ensure his presence at trial.

### IV. Providence of the Other Pleas

■ Turning to the remaining assignments of error and the error personally asserted by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.R. 1982), we find no relief is warranted. First, we hold that the appellant's pleas of guilty to twice communicating a threat to his lover, Ms. C, were provident, despite the conditional language of one of the threats contained in the stipulation of fact, admitted pursuant to the pretrial agreement, that the appellant "threaten[ed] to hurt her if she left him." The stipulation of fact addressed only the second of the two threats that occurred 28 February 1991. This threat was made while the appellant was absent without leave in Cleveland, Georgia, and occurred during a heated argument when Ms. C told the appellant she wanted to return home. Like the first threat on 1 January 1991, the second threat expressed a present determination to injure, and consequently, the second threat was not negated by the conditional language. *United States v. Alford*, 32 M.J.

596, 597 (A.C.M.R.1991), *aff'd*, 34 M.J. 150 (C.M.A.1992). Even if the second threat contained a condition, it was a condition the appellant was not entitled to impose. *Id.*

 Secondly, the military judge did not err in accepting the appellant's pleas of guilty to adultery. We hold that the appellant's unsworn statements during the sentencing portion of the trial, such as, "Sir, upon returning from leave [my] suspicions were confirmed about Ms. C's marital status," and, "Coming from a Catholic family it is highly embarrassing to return to my family and tell them that the woman [I] brought home is indeed married," did not raise the possibility of the defense of mistake of fact. The mere possibility of a defense or of a conflict between a guilty plea and the accused's statements is not enough to render a guilty plea improvident. *United States v. Blake*, 33 M.J. 923, 925 (A.C.M.R.1991). We believe, instead, that the appellant's statements supported his guilty pleas. The defense of mistake of fact requires that the appellant held an incorrect belief of the true circumstances of Ms. C's marital status. R.C.M. 916(j). To raise the possibility of this defense, the appellant would have had to believe at the various times he had intercourse with Ms. C that she was *single*. The appellant never believed Ms. C was single. Instead, it can be reasonably inferred from the appellant's statements that prior to returning from leave, he suspected Ms. C was married. Appellant stated that after he returned from leave his suspicions as to her marital status "were confirmed" and that she was "indeed married."

## V. Sentence Appropriateness

 Finally, the maximum punishment the appellant could have received for the offenses of which he was found guilty was a dishonorable discharge, confinement for sixty-one years, and total forfeiture of all pay and allowances. On the basis of our review of the entire record, we are satisfied that justice was done and the appellant's punishment was no more than he deserved. Accordingly, we find that the approved sentence was fair, appropriate, and was not unduly severe.

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge WERNER concur.