UNITED STATES, Appellee,

v.

Sergeant Charles E. SINGLETON, United States Army, Appellant.

ARMY 20010376.

U.S. Army Court of Criminal Appeals.

13 Nov. 2003.

Eilin J. Chiang, JA (on specified issue); Colonel Robert D. Teetsel, JA; Major Imogene M. Jamison, JA; Captain Eilin J. Chiang (on reply brief).

For Appellee: Colonel Lauren B. Leeker, JA (on brief); Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Mark L. Johnson, JA; Captain Mark J. Hamel, JA (on specified issue); Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Captain Janine P. Felsman, JA; Captain Mark J. Hamel, JA (on response brief).

Before HARVEY, BARTO, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

HARVEY, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of willfully disobeying a superior commissioned officer, sodomy upon a child under twelve years of age, and aggravated assault, in violation of Articles 90, 125, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 925, and 928 [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for eighteen years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority, pursuant to a pretrial agreement, reduced the confinement to fourteen years but otherwise approved the remainder of the adjudged sentence. Appellant's case is before the court for automatic review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

For Appellant: Captain Eilin J. Chiang, JA; Captain Craig A. Harbaugh, JA (on brief); Colonel Robert D. Teetsel, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain

In an unsworn, unsigned appendix to appellate defense counsel's brief [hereinafter *Grostefon*[1] submission], appellant described, *inter alia*, why he believes he was unlawfully punished while in pretrial confinement.[2] He

---

1. This issue was initially submitted to the court pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

2. Appellant made seven allegations of unlawful pretrial punishment: (1) harsh conditions while in special quarters; (2) lack of access to a law library; (3) disparaging language by guards; (4)

exposure to cold temperatures; (5) contact with sentenced prisoners while on work details; (6) exposure to vermin; and (7) contact with fumes and dust.

urged us to order four-for-one credit for the entire 144 days[3] he served in pretrial confinement. We invited the parties to submit additional evidence and specified the issue of whether we should order four-for-one credit for illegal pretrial punishment based upon appellant's unrebutted allegations.[4]

Appellate government counsel submitted two affidavits from Chief Warrant Officer Two (CW2) Steven Laird, Executive Officer, Camp Lejeune Base Brig (Brig), several Brig maintenance and inspection reports, and a policy memorandum addressing appellant's allegations. Appellate defense counsel submitted, *inter alia,* an affidavit from appellant agreeing with some portions, but also contradicting other portions, of CW2 Laird's first affidavit. Appellate government counsel expressed a preference for a *DuBay*[5] hearing, as opposed to our granting confinement credit as we did in *United States v. Fagan,* 58 M.J. 534 (Army Ct.Crim.App.), *cert. for rev. filed,* Dkt. No. 03–5002/AR (C.A.A.F.2003). We ordered a *DuBay* hearing to resolve the conflicts between appellant's and CW2 Laird's affidavits. Appellate government

counsel filed a motion requesting reconsideration of our order—asserting that our opinion in *Fagan* suggested that we "failed to analyze appellant's allegations under either the first or fourth *Ginn*[6] principle." In support of this claim, appellate government counsel discussed three cases where our superior court ordered a *DuBay* hearing because of conflicting affidavits[7] and three cases where they determined no *DuBay* hearing was necessary, despite the filing of affidavits by the government and defense.[8]

We have reconsidered our order, and will more extensively explain our rationale for ordering a *DuBay* hearing in appellant's case.

## FACTS

Appellant committed sodomy upon his four-year-old stepdaughter in their quarters on post. That same day, appellant's spouse told his company commander of this misconduct. The company commander ordered appellant to move into the barracks and to refrain from having contact with his spouse. Ten days later, appellant went to the housing

3. The parties at trial agreed appellant was in pretrial confinement for 143 days.

4. We commend appellate counsel for the excellent briefs submitted to the court in response to the specified issue.

5. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

6. In *United States v. Ginn,* 47 M.J. 236, 248 (C.A.A.F.1997), our superior court articulated six principles for resolving legal issues asserted by post-trial affidavits. The first and fourth *Ginn* principles provide:

First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

. . . .

Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.
*Ginn,* 47 M.J. at 248.

7. *United States v. Sales,* 56 M.J. 255, 257–59 (C.A.A.F.2002) (ordering a *DuBay* hearing in an ineffective assistance of counsel (IAC) case where

post-trial affidavits directly conflicted on two issues concerning the content of a potential defense witness' testimony); *United States v. Fricke,* 53 M.J. 149, 155 (C.A.A.F.2000) (ordering a *DuBay* hearing in an unlawful pretrial punishment case where prison official's affidavit "impliedly dispute[d]" appellant's affidavit concerning intent of prison officials in imposing continuous lockdown); *United States v. Davis,* 52 M.J. 201, 203, 206 (C.A.A.F.1999) (ordering a *DuBay* hearing in an IAC case where post-trial affidavits conflicted concerning advice to appellant about possibility of retirement).

8. *United States v. Dewrell,* 55 M.J. 131, 135 (C.A.A.F.2001) (declining to order a *DuBay* hearing in an IAC case because "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability" of appellant's allegation that his lawyers did not permit him to testify (inner quotation marks and citation omitted)); *United States v. Thompson,* 51 M.J. 431, 436 (C.A.A.F.1999) (declining to order a *DuBay* hearing in an IAC case where appellant and government filed post-trial affidavits because appellant's affidavit did not show how his counsel's advice prejudiced him); *United States v. Grant,* 49 M.J. 295, 299 (C.A.A.F.1998) (declining to order a *DuBay* hearing in an IAC case where appellant and government filed post-trial affidavits because appellant's affidavit did not state "what he would have told the court-martial if he had testified").

office, lied about losing his house key, and obtained a duplicate key. Appellant then entered his quarters and contacted his spouse, who agreed to drive appellant back to his barracks. A struggle ensued after parking near the barracks. Appellant struck his spouse's head twice with a beer bottle. The beer bottle broke and appellant's spouse received a laceration and bruising to her brain. She spent five days in the hospital and suffered for weeks from frequent headaches and dizzy spells. Prior to trial, appellant made two separate, false written statements to law enforcement, as follows: (1) he denied committing sodomy upon his stepdaughter, and (2) he claimed that he accidentally struck his wife with the beer bottle.

At trial, appellant's trial defense counsel told the military judge that there were no issues regarding Article 13, UCMJ, 10 U.S.C. § 813, pretrial punishment. The military judge did not ask appellant whether he believed he was subjected to unlawful pretrial punishment, nor did appellant volunteer such information. Both appellant and his counsel submitted statements to the convening authority under Rule for Courts–Martial [hereinafter R.C.M.] 1105. However, neither mentioned the conditions now complained of, nor did they ask the convening authority for confinement credit for unlawful pretrial punishment.

## DISCUSSION

■ Article 13, UCMJ, provides:

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to ensure his presence [at trial], but he may be subjected to minor punishment during that period for infractions of discipline.

Article 13, UCMJ, proscribes purposefully imposing punishment upon an accused before guilt or innocence has been adjudicated or the "infliction of unduly rigorous circumstances during pretrial detention which, in sufficiently egregious circumstances, may give rise to a permissible inference that an

accused is being punished, or may be so excessive as to constitute punishment." *United States v. McCarthy*, 47 M.J. 162, 165 (C.A.A.F.1997); *see Coyle v. Commander, 21st Theater Army Area Command*, 47 M.J. 626, 630 (Army Ct.Crim.App.1997). Conditions are not deemed "unduly rigorous" if, under the totality of the circumstances, they are reasonably imposed pursuant to legitimate governmental interests. *See McCarthy*, 47 M.J. at 168. Constitutional due process requires an adjudication of guilt before punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Pretrial confinement becomes unlawful punishment "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* at 539, 99 S.Ct. 1861.

"The burden is on appellant to establish entitlement to additional sentence credit because of a violation of Article 13." *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002) (citing R.C.M. 905(c)(2) (2000 ed.)). The issue of whether appellant was subjected to pretrial punishment is a mixed question of law and fact. *Id.* We conduct a de novo review of the "ultimate question whether an appellant is entitled to credit for a violation of Article 13." *Id.; see McCarthy*, 47 M.J. at 165.

Initially, we must determine "whether appellant has raised a legal claim which, if true, would entitle him to relief." *Fricke*, 53 M.J. at 155 (citing *Ginn*, 47 M.J. at 244). In *Fricke*, a case arising from the Norfolk Naval Brig, appellant was "locked in his cell, 23 hours per day, 15½ of which he was required to sit at a small wooden desk or stand nearby if he fell asleep at the desk." *Id.* Under these circumstances, our superior court remanded the case for a *DuBay* hearing, stating:

The conditions alleged [by Lieutenant Commander Fricke] are not *"de minimus"* impositions on a pretrial detainee for which the law is not concerned. Instead, they are "genuine privations and hardship over an extended period of time," which

"might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." *Bell v. Wolfish,* 441 U.S. at 542, 99 S.Ct. 1861, 60 L.Ed.2d 447[.]

*Id.* (citations omitted). We conclude that if appellant accurately claimed that he was subjected to disparaging language by guards and was unnecessarily exposed to cold temperatures, he would have been subjected to unlawful pretrial punishment. For the reasons stated in the following discussion, we have also determined that appellant's other claims do not require further inquiry.

### Appellant's credibility

In their motion for reconsideration, the government primarily urges us to reject appellant's contentions whenever they do not agree with CW2 Laird's by applying the fourth *Ginn* principle. The fourth *Ginn* principle provides that the court can discount factual assertions and decide the legal issue when, "appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts." *Ginn,* 47 M.J. at 248. In appellant's case, five factors reduce his credibility: (1) appellant's claims are self-serving; (2) appellant lists the names of thirteen supporting witnesses; however, there is no description of what the witnesses would say, nor is there any indication that appellant or appellate defense counsel have interviewed them; (3) while appellant asserts he told his trial defense counsel and other detainees, inmates, prison counselors, and some guards about unlawful conditions at the Brig, appellant has not asserted that he complained to Brig officials, his chain of command, or the magistrate; (4) appellant did not complain about unlawful pretrial punish-

ment at trial or to the convening authority;[9] and (5) appellant's general credibility is damaged by his two false statements to law enforcement while his case was being investigated. While these facts cause us serious misgivings about appellant's credibility, our misgivings are not sufficiently weighty to permit us to summarily reject appellant's claims.

### Waiver

In appellant's *Grostefon* submission, appellant alleges that his trial defense counsel advised him that he should not raise the issue of unlawful pretrial punishment with the military judge or convening authority because this issue would be "better raised on appeal."

■■■ Complaints about unlawful pretrial confinement conditions, in violation of Article 13, UCMJ, are ordinarily deemed waived if made for the first time on appeal. *See United States v. Huffman,* 40 M.J. 225, 227 (C.M.A.1994) (requiring affirmative waiver regarding claims of Article 13, UCMJ, violations), *overruled prospectively by United States v. Inong,* 58 M.J. 460 (C.A.A.F.2003) (eliminating requirement of affirmative waiver); *United States v. Fogarty,* 35 M.J. 885, 888 (A.C.M.R.1992) (holding failure to raise issue of pretrial punishment at trial "usually" waives issue on appeal); R.C.M. 905(e), 907(b)(2)(D)(iv). This record, unlike many we have seen, lacks appellant's affirmative waiver of the issue of unlawful pretrial punishment.[10] We are also cognizant of appellant's assertion that his counsel advised him that the motion could be raised on appeal. *See Fricke,* 53 M.J. at 154 n. 5 ("In view of appellant's unrebutted assertion that no motion for sentence credit based on unlawful

9. *See Dewrell,* 55 M.J. at 135 (stating, "[a]ppellant's failure to speak up at or after trial belies his assertion" in his affidavit and increases the improbability of his claims).

10. We commend the practice of many military judges, who routinely ask trial defense counsel *and* the accused, individually, if there are any issues regarding pretrial punishment under Article 13, UCMJ. *See* Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook, ch. 2, § IV, at 32 (1 Apr. 2001). An affirmative waiver at trial of any pretrial punishment issues by both trial defense counsel and the accused

would generally preclude appellate review and concomitant claims of "sandbagging." *See United States v. Combs,* 47 M.J. 330, 334–37 (C.A.A.F. 1997) (addressing the issue of affirmative waiver in the majority, concurring, and dissenting opinions); *Ginn,* 47 M.J. at 248 (in the fifth *Ginn* principle, highlighting the importance of appellant's statements at trial in resolving such issues); *Huffman,* 40 M.J. at 229 (Crawford, J., dissenting in part and concurring in the result) (noting that inquiry by the military judge about unlawful pretrial punishment would obviate such post-trial claims).

pretrial punishment was made at his trial on advice of defense counsel that it could be raised on appeal, we do not find a knowing and intelligent waiver of this issue.").

■ Appellant's assertion is essentially one of ineffective assistance of counsel. As such, appellant has waived his attorney-client privilege as to matters reasonably related to his allegations. *See United States v. Lewis*, 42 M.J. 1, 5 (C.A.A.F.1995). During his guilty plea inquiry, appellant stated that he had sufficient time to discuss his case with both of his trial defense counsel, that he was satisfied that their advice was in his best interests, and that he was satisfied with both of his trial defense counsel. Appellate government counsel have not provided a response from trial defense counsel to appellant's *Grostefon* allegations. Appellate government counsel have not explained why trial defense counsel told the military judge that there was no illegal pretrial punishment. *See Lewis*, 42 M.J. at 6. Further, appellate government counsel have not requested that we order an affidavit from trial defense counsel to clarify these issues.

We elect to consider the issue of waiver based on the facts as asserted by appellant, in accordance with *Ginn's* third principle, which states, "if the affidavit is factually adequate on its face to state a claim of legal error and the Government . . . does not contest the relevant facts . . . the court can proceed to decide the legal issue on the basis of those uncontroverted facts." *Ginn*, 47 M.J. at 248. Accepting as true appellant's unrebutted assertion that his counsel told him he should raise the issue of illegal pretrial punishment for the first time at our court, we conclude that this issue was not waived.

### Seven allegations of unlawful pretrial punishment

Appellant's affidavit asserted, and CW2 Laird attempted to respond to, seven allegations of unlawful pretrial punishment.

**(1) Conditions of pretrial confinement in special quarters**

■ Appellant stated that he was placed in special quarters (maximum inside custody with limited privileges) for fifty-seven days during the initial period of his pretrial confinement. While in special quarters, he was segregated from all other inmates twenty-three out of twenty-four hours a day, seven days a week. For the first two weeks, appellant was allowed out of his cell for showers only. He was shackled whenever he left his cell, except when in the shower. Also, appellant was not permitted to lie down on his bed from about 0500 until 1800.

Chief Warrant Officer Two Laird agreed with appellant's description of special custody.[11] He stated that detainees are required to be "dressed and shaved by 0630" and are not permitted to sleep or lie on their beds during the day "until evening chow." During the day, detainees are permitted to "sit, stand or move about" within their cells. Chief Warrant Officer Two Laird further explained that appellant was placed in special custody because of the serious and violent offenses he was charged with committing and because he had a "serious drug/alcohol problem."[12] As a result of a review of appellant's custody level, he was transferred into the general confinement population for the remaining eighty-six days of his pretrial confinement.

We find no evidence that appellant's placement or treatment in special quarters was intended as punishment. In *McCarthy*, the military judge found that appellant had been retained in maximum custody based on the following six reasons:

> the "seriousness" of his charges [rape, sodomy, and indecent acts with a child (his three-year-old daughter), and two violations of a protective order]; the potential of "a long sentence"; his "prior pattern of

---

11. Appellant's description of the circumstances of special quarters is generally consistent with the requirements in Navy Instr. 1640.9B, Department of the Navy Corrections Manual (2 Dec. 1996) [hereinafter SECNAVINSTR], art. 4201.2.a, at 4–6, 4–7, http://neds.nebt.daps.mil/1640.htm.

12. Appellant's placement in maximum custody met the criteria in SECNAVINSTR, art. 4202.4, at 4–9.

poor judgment" (breaking the protective order and the restriction); "his potential threat to families and dependents on base"; the "safety" of himself and the brig staff; and "assurance" of his "presence for trial."

*McCarthy*, 47 M.J. at 163–64. Appellant's submission gives no reason for his placement into special quarters. It also fails to indicate that his treatment was the result of animus from jail officials, his chain of command, or any governmental agency. *See generally id.* at 165.

Contrary to appellant's allegations, his special quarters classification for fifty-seven days served a legitimate governmental objective. He was charged with serious, violent offenses, and appellant had failed to comply with restrictions ordered by his company commander. Under these circumstances, special quarters did not amount to an unduly rigorous condition. *See United States v. Mosby*, 56 M.J. 309, 310–11 (C.A.A.F.2002) (finding that maximum custody at Brig was warranted based on severity of charge, that is, murder); *McCarthy*, 47 M.J. at 167 (upholding a finding of no illegal pretrial punishment for accused held in maximum status); *cf. United States v. Scalarone*, 54 M.J. 114, 116–117 (C.A.A.F.2000) (affirming eighty-seven days of confinement credit for time spent in "special quarters" because conditions were more rigorous than necessary to ensure presence at trial).

We find that CW2 Laird provided a valid reason for appellant's placement into special quarters. *See McCarthy*, 47 M.J. at 165. We also find that appellant has failed to demonstrate that the conditions of his confinement were more rigorous than necessary. We recognize that egregious conditions, alone, may give rise to a permissive inference that an appellant is being punished or may, itself, constitute punishment. *See Bell*, 441 U.S. at 538–39, 99 S.Ct. 1861. However, the conditions CW2 Laird described were not egregious. While we accept that appellant did not find them pleasant, it is axiomatic that prisoners may not dictate the conditions of their confinement. *United States v. Palmiter*, 20 M.J. 90, 96 (C.M.A.1985).

The decisions by Brig officials regarding the efficient use of finite facilities advanced reasonable and legitimate governmental interests. We decline to " 'second guess' the administrative custody classification decisions assigned to a prisoner absent compelling reasons to do so." *United States v. Jenkins*, 50 M.J. 577, 583 (N.M.Ct.Crim.App.1999), *aff'd on other grounds*, 54 M.J. 12 (C.A.A.F.2000). We decline to require Brig personnel to change the procedures described. Likewise, we decline to grant additional confinement credit because Brig personnel made a rational decision on facility usage that did not impose egregious conditions on appellant.

**(2) Lack of a law library for use of detainees**

Appellant claimed he was denied access to a law library. Chief Warrant Officer Two Laird countered that all inmates had a right to access legal material by submitting a written request to their counselor. The counselor would then refer the request to the base staff judge advocate, who would forward responsive documents to appellant. Appellant did not submit any written requests for legal materials. Further, the evidence does not preclude us from assuming that appellant was represented by military counsel within a few days of his confinement.

■ The right of convicted prisoners to have access to the courts requires that they have either "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Having a law library available for detainees to conduct legal research is one of several means available to assure meaningful access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (citing *Bounds*, 430 U.S. at 830, 97 S.Ct. 1491). We agree with the Navy–Marine and Air Force Courts of Criminal Appeals that another means of providing meaningful access to the courts is through the appointment of a defense attorney. *See United States v. Wallace*, 58 M.J. 759, 769–70 (N.M.Ct.Crim. App.2003); *United States v. Carter*, 56 M.J. 649, 650 (A.F.Ct.Crim.App.2001), *pet. denied*, 56 M.J. 467 (C.A.A.F.2002).

■ Evidently, appellant had assigned military counsel and he could have obtained legal materials from the base staff judge advocate. Also, appellant has failed to identify what information was unavailable and he has not explained how he was prejudiced. As such, we find that appellant had access to law library materials and that Brig law library procedures were not an unduly rigorous condition entitling appellant to Article 13, UCMJ, credit. *See McCarthy,* 47 M.J. at 165.

### (3) Disparaging language by guards

While in pretrial confinement, appellant was not permitted to wear his military uniform. When he was in special quarters, he wore hospital scrubs. In his affidavit, appellant stated:

> When they called me or other detainees "private," there was nothing I could do about it. In their eyes, we were nothing. There were guards at the Brig who told me that I might have been some big gung ho infantry sergeant in the 82d Airborne, but at the Brig I was nothing but a private.

Appellant's affidavit is "opposed by post-trial assertions of a prison administrator as to general prison practices," *Fricke,* 53 M.J. at 155, rather than by specific assertions directly related to appellant's treatment. Chief Warrant Officer Two Laird said that detainees such as appellant are referred to as "detainee" and that he never heard anyone call a detainee "private." As such, we will treat appellant's allegation as essentially unrebutted. *See Id.; Combs,* 47 M.J. at 333 (holding defense affidavit alleging improper rank reduction by prison officials pending sentencing outcome was "unrebutted and unequivocally established the punitive intent of command authorities").

■ When commanders and superiors publicly denounce, degrade, or humiliate an accused prior to trial, these words may constitute unlawful pretrial punishment warrant-ing confinement credit. *See United States v. Villamil–Perez,* 32 M.J. 341, 342–43 (C.M.A. 1991) (supervising officer's posting, on workplace bulletin board, of a serious incident report, which included Specialist Perez's alleged drug offense and a prior letter of reprimand, was prohibited by Article 13, UCMJ); *United States v. Stamper,* 39 M.J. 1097, 1100 (A.C.M.R.1994) (finding company commander's remarks to accused and before others, identifying him as a criminal suspect with a propensity to steal, constituted pretrial punishment); *United States v. Latta,* 34 M.J. 596, 597 (A.C.M.R.1992) (granting Article 13, UCMJ, relief where first sergeant sarcastically referred to accused as his "favorite AWOL case" before unit formation). While the words the guards allegedly used to degrade appellant are not as abusive as those used in *United States v. Fulton,* 55 M.J. 88, 89 n. 1 (C.A.A.F.2001),[13] if the guards or other persons in authority called appellant "private," we consider this to be unlawful pretrial punishment in violation of Article 13, UCMJ. Assuming appellant's affidavit is accurate with respect to the derogatory comments of the guards, and taking into consideration the failure of appellant's complaint to specify how often it occurred, the date(s) on which it occurred, or the name(s) of the guard(s) who referred to him as "private," we would order five days of confinement credit.

### (4) Exposure to cold temperatures and refusal to permit appellant to wear available, additional clothing

Appellant said he was exposed to cold temperatures in special quarters because the heat went out two times and it was not repaired for "more like two weeks" on each occasion. "[O]n several occasions" a guard told appellant that he was not permitted to wear his physical training uniform under his hospital scrubs to stay warm. Chief Warrant Officer Two Laird replied that the special quarters area is heated in the winter and that it was continuously heated without interruption during appellant's stay.[14] Chief Warrant Officer Two Laird further explained

---

13. While in pretrial confinement, Airman First Class Fulton was required to refer to himself as "prisoner bitch," "prisoner jackass," and as a homosexual in graphic and pejorative terms. *Id.*

14. The Brig is required to maintain the same temperature and ventilation as Bachelor Enlisted Quarters. *See* SECNAVINSTR, art. 2204.2.d(2), at 2–14.

that during the winter prisoners are permitted to wear "either a sweat shirt and sweat pant[s] under their uniform or thermal underwear." As such, appellant and CW2 Laird's affidavits are inconsistent with regard to appellant's exposure to cold and about the wearing of extra clothing. "Article 66(c) does not authorize a Court of Criminal Appeals to decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Ginn*, 47 M.J. at 243. Thus, one option would be to order a *DuBay* hearing to resolve this inconsistency. *Id.* at 248.

Assuming appellant's affidavit is accurate, the government has not posed a legitimate governmental purpose for exposing appellant to the winter cold. The refusal to permit appellant to wear extra clothing shows a punitive intent and is unlawful pretrial punishment in violation of Article 13, UCMJ. *See Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ("[T]he temperature [a prisoner] is subjected to in his cell" is a condition of confinement that may be so inhumane as to implicate the Eighth Amendment to the U.S. Constitution.). When Article 13 is violated, however, we need not determine whether appellant's Constitutional rights under the Due Process Clause were also violated. *See Sanders v. Sheahan*, 198 F.3d 626, 628 (7th Cir.1999) ("The protections extended to pretrial detainees under the Due Process Clause are at least as extensive as the protections against cruel and unusual punishment extended to prisoners by the Eighth Amendment."). Assuming appellant's affidavit is accurate with respect to allegations of his needless exposure to cold, we may exercise our "broad power to moot claims of prejudice" under *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F.1998), by ordering an additional twenty-eight days of confinement credit.

#### (5) Contact with sentenced prisoners on work details

▬ Appellant complained, *inter alia,* that for a total of eighty-six days he was forced to work with post-conviction inmates in the Brig dining facility after being re-leased from special quarters. Chief Warrant Officer Two Laird answered that detainees are assigned clean-up duties in the dining facility, while post-trial prisoners work as cooks. He explained that detainees and prisoners "do not work together on the same tasks or in the same part of the mess deck."

Pretrial confinees may be required to perform useful labor and we do not expect that detainees be kept completely separate from the other prisoners. *See Palmiter*, 20 M.J. at 94–95. We find the incidental contact that appellant alleges he had with sentenced prisoners in the dining facility does not constitute punishment. "[Appellant] did not work on hard-labor details, and his association with sentenced prisoners was limited to casual contacts while he was performing work necessary for the operation of the facility." *Id.* at 95.

#### (6) Exposure to rats or mice

▬ Appellant stated that he was exposed to rat or mice infestation to the extent that the rodents would come into the inmates' cells in special quarters when meals were served. Guards set up their own homemade traps to catch the rodents. Chief Warrant Officer Two Laird responded that he found no written or oral evidence indicating that appellant complained about rats. He also said no rat traps were used in the Brig. Finally, CW2 Laird stated that monthly inspection reports by a base medical representative did "not support" appellant's allegations of a rodent infestation.

We apply the first *Ginn* principle and reject appellant's claim because after resolving the factual dispute in appellant's favor, the error "would not result in relief." *Ginn*, 47 M.J. at 248. Appellant did not state that a rat or mouse ever came into his cell, nor did he explain how the transitory presence of such vermin in other cells harmed him. Additionally, appellant has not alleged an intent to punish by confinement officials. *See generally Jordan v. Doe*, 38 F.3d 1559, 1565–66 (11th Cir.1994) (finding no Due Process violation where unsanitary conditions claimed because no violation of "clearly established rights"). While we would order no confinement credit based upon appellant's claims of

rodent infestation, appellant will be permitted to present testimony or evidence elaborating on this claim at his *DuBay* hearing. *See United States v. Erby,* 54 M.J. 476, 478–79 (C.A.A.F.2001) (remanding for additional factfinding because of ambiguities in appellant's statement).

### (7) Appellant's contact with fumes and dust during Brig renovation

Appellant said he was subjected to fumes and dust for one week while special quarters were being stripped, painted, and renovated, but he did not indicate the dates of his exposure with more specificity. Chief Warrant Officer Two Laird replied that appellant's stay in special quarters overlapped for five days with the period of time when special quarters was being painted by a contractor. Special quarters were otherwise not being painted or renovated while appellant was confined therein.

Assuming appellant's affidavit is accurate, the government has not explained why appellant was moved into special quarters, as opposed to somewhere else where he would not have suffered exposure to fumes and dust. However, appellant's affidavit does not indicate that he suffered any significant, negative physical impact from the fumes and dust. While we would order no confinement credit based upon appellant's claim of exposure to dust and fumes as currently stated, appellant will be permitted to present testimony or evidence elaborating on this claim at his *DuBay* hearing. *See Erby,* 54 M.J. at 478–79.

### CONCLUSION

Appellant's failure to raise the issue of unlawful pretrial punishment to Brig officials, the military magistrate, his chain of command, or the convening authority is strong evidence that the conditions of which he now complains were not so abusive as to merit significant confinement credit. *See Palmiter,* 20 M.J. at 97.

The government has requested a *DuBay* hearing to contest appellant's complaints in lieu of the award of confinement credit to moot appellant's claim. *See, e.g., Fagan,* 58 M.J. at 534–35, 538–39 (ordering one month of confinement credit to moot claim of cruel

and unusual punishment at confinement facility). However, we are cognizant that a *DuBay* hearing would be expensive and time consuming. Potential witnesses could include personnel still stationed at the Brig, as well as other appellants who are in other military confinement facilities. We are also well aware that many other witnesses have probably routinely moved or been deployed from the Brig or Fort Bragg since appellant was in pretrial confinement almost three years ago. Because a *DuBay* hearing may be more difficult or expensive than the government currently envisions, we offer the convening authority the option of returning this case to us without holding a *DuBay* hearing. In this event, we will order that appellant receive a total of thirty-three days of confinement credit to moot appellant's claim of unlawful punishment while in pretrial confinement.

NOW, THEREFORE, IT IS ORDERED:

1. That the record of trial be returned to The Judge Advocate General for such action as is required to conduct a limited hearing pursuant to *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967);

2. That the *DuBay* military judge will determine whether appellant received ineffective assistance of counsel during appellant's trial with respect to the issue of illegal pretrial punishment;

3. That appellant's two military trial defense counsel shall provide information, by affidavit, responding to appellant's allegations, which information includes but is not necessarily limited to, answers to the following questions:

A. What information did you (trial defense counsel) possess regarding appellant's allegations that he was subjected to illegal pretrial punishment, and when, if ever, did you (trial defense counsel) become aware of such information? and

B. Did you (trial defense counsel) tell appellant that defense counsel would not provide to the military judge information regarding illegal pretrial punishment because this information would be better presented to appellate authorities?;

4. That the *DuBay* military judge will decide whether testimony at a *DuBay* hearing by appellant's military trial defense counsel is necessary. (If the affidavit provided by military trial defense counsel is inconsistent with appellant's *Grostefon* submission and affidavit, the *DuBay* military judge shall require testimony of appellant's military trial defense counsel at the *DuBay* hearing.);

5. With regard to the allegations in appellant's affidavit claiming illegal pretrial punishment, the *DuBay* hearing will determine whether the following events occurred, and if so, whether there was a legitimate governmental purpose for such treatment:

A. On two occasions the heat went out in special quarters. "Both times, despite [appellant and other inmates' verbal] complaints, it was more like two weeks before the heat was fixed." Appellant was not permitted to wear his physical training gear beneath his clothing to stay warm;

B. The guards referred to appellant as a "private";

C. For five days, appellant was subjected to fumes and dust while the Brig confinement facility was being renovated; and

D. Appellant was exposed to rats and/or mice;

6. That the *DuBay* military judge will permit the presentation of witnesses and evidence, make rulings as appropriate, and enter findings of fact and conclusions of law

concerning appellant's allegations of illegal pretrial punishment in violation of Article 13, UCMJ;

7. That should the *DuBay* military judge determine that appellant was subjected to illegal pretrial punishment, the *DuBay* military judge will recommend an appropriate award of confinement credit;

8. That the *DuBay* hearing will be concluded no later than ninety (90) days from the date of this Order;

9. That at the conclusion of the *DuBay* proceedings, the record, along with an authenticated verbatim transcript of the hearing, will be expeditiously returned to this Court for further review; and

10. That if the convening authority should determine that a *DuBay* hearing is impracticable, the record will be returned to the Court, and we will "exercise our 'broad power to moot claims of prejudice'"[15] by granting appellant thirty-three days of confinement credit.

Judge BARTO and Judge SCHENCK concur.

---

15. *Fagan,* 58 M.J. at 535; *see also United States v. Tardif,* 57 M.J. 219, 223 (C.A.A.F.2002), *cert. for rev. filed on other grounds,* Dkt. No. 03–5004/CG (C.A.A.F.2003).