UNITED STATES, Appellee,

v.

Private First Class Fernando JAUREGUI, United States Army, Appellant.

ARMY 20030289.

U.S. Army Court of Criminal Appeals.

3 Sept. 2004.

For Appellant: Major Sean S. Park, JA; First Lieutenant Robert L. Martin, JA (on brief); Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Captain Danyele Jordan, JA (on specified issue).

For Appellee: Lieutenant Colonel Margaret B. Baines, JA (on brief); Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Theresa A. Gallagher, JA; Captain Ryan R. McKinstry, JA (on specified issue).

Before CAREY, Chief Judge, HARVEY, Senior Judge, and SCHENCK, Appellate Military Judge.

OPINION OF THE COURT

CAREY, Chief Judge:

A military judge sitting as a special court-martial found appellant guilty, consistent with his plea, of absence without leave (AWOL) in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for one hundred days, forfeiture of $767 pay per month for four months, and reduction to Private E1.

The case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

We agree with appellate government and defense counsel that finance erroneously failed to pay appellant for seventy-seven days—the period of time appellant performed military duties after returning from his AWOL.[1] Appellate defense counsel also assert that the government violated Article 13, UCMJ, 10 U.S.C. § 813, because this failure to pay appellant was based on his pending trial. As a remedy, appellate defense counsel urge us to disapprove all confinement. We agree with appellate government counsel that if there was a violation of Article 13, UCMJ, it was affirmatively waived at trial. We find that appellant's trial defense counsel (TDC) brought appellant's pay problem to the attention of the staff judge advocate (SJA) and convening authority after his sentence was adjudged. No one took corrective action because of incorrect advice from a finance officer. We hold that finance's failure to pay appellant caused appellant's sentence to be inappropriate. We will order relief in our decretal paragraph.

## FACTS

Appellant left his unit without authority on 16 May 2001. Los Angeles police arrested appellant on 14 December 2002, based on a military detainer.[2] Two days later appellant was released from civilian confinement. Appellant reported to Fort Lewis and began performing military duties on 26 December 2002. Appellant's expiration of term of service (ETS) date before he went AWOL was 15 November 2002. Appellant's adjusted ETS date was 14 June 2004.[3]

## Information Available or Presented at Trial

Both appellant and his TDC told the military judge at trial, on 13 March 2003, that appellant was not subjected to illegal pretrial punishment in violation of Article 13, UCMJ. Appellant and his TDC failed mention to the military judge that appellant was not being paid. Appellant filed a statement with our court, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), indicating that: (1) appellant informed his TDC of his pay problems prior to trial; (2) his TDC went to the finance office before trial in an attempt to resolve the problems; (3) his TDC was unsuccessful in restoring appellant's pay; and (4) his TDC told appellant that she would continue her attempts to get appellant paid after trial. Appellant's *Grostefon* statement does not describe what finance officials told his TDC. The parties have not filed with our court any statements from appellant's TDC explaining why she did not raise this issue at appellant's trial.[4]

---

1. "[A] member of a uniformed service who is on active duty" is entitled to basic pay. 37 U.S.C. § 204(a)(1).

2. *See Manual for Courts–Martial, United States* (2002 ed.), Part IV, para. 10c(10)(d); Army Reg. 630–10, Personnel Absences: Absence Without Leave, Desertion, and Administration of Personnel Involved in Civilian Court Proceedings, paras. 4–1a(3), 4–12a(2), and Terms at p. 29 (31 Aug. 2001). All regulatory provisions cited in this opinion remain in effect in current regulations unless otherwise stated.

3. Time lost as a result of being AWOL will be made good at the end of the enlistment period, unless waived by the appropriate authority. 10 U.S.C. § 972(a); Army Reg. 635–200, Personnel Separations: Enlisted Personnel, para. 1–21a–b (1 Nov. 2000).

4. In general, the Department of Defense Finance and Accounting Service's (DFAS) failure to pay an accused who is awaiting trial, without more information, is insufficient to raise a potential violation of Article 13, UCMJ. Trial defense counsel must first establish that pay, allowances, entitlements, deductions, and allotments were properly calculated. This determination includes: setoffs for prior debts, such as to the Army and Air Force Exchange System; resolution of any adverse determinations by line of duty investigations or reports of survey; and recoupment of any previous overpayment (which is common in AWOL cases). In short, there are myriad lawful or erroneous reasons unrelated to an accused's pending court-martial that could be the basis for DFAS' failure to pay an accused who is pending trial.

To raise the issue at trial, TDC must present evidence that: (1) DFAS illegally failed to pay the accused because of the accused's pending court-martial; (2) the accused requested reimbursement through DFAS channels; (3) DFAS denied relief; and, (4) the accused is entitled to judicial relief in a specified dollar amount. *See United States v. Messner*, 48 M.J. 637, 638–39 (Army Ct.Crim.App.1998), *set aside by* 51 M.J. 487 (C.A.A.F.1999) (summary disposition), *remanded to* ARMY 9600694 (Army Ct.Crim.App. 27 May 1999) (per curiam) (unpub.), *aff'd*, 53 M.J. 10

## Post-trial Information Available before Initial Action

On 27 May 2003, trial counsel sent an electronic mail message (e-mail) to appellant's company commander requesting assistance in getting finance to pay appellant. The next day, appellant's company commander sent an e-mail to finance requesting payment to appellant. On 29 May 2003, Captain (CPT) Choi, in Fort Lewis' Finance Support Operations responded in an e-mail to appellant's TDC, trial counsel, and company commander, stating that appellant was not entitled to pay pursuant to Dep't of Def. Fin. Mgmt. Reg., Vol. 7A: Military Pay Policy and Procedures—Active Duty and Reserve Pay, ch. 3, para. 030207.B (July 1996) [hereinafter DoDFMR]. Captain Choi accurately quoted paragraph 030207.B, as follows: "An absentee who surrenders or is apprehended after a term of enlistment has expired is not entitled to pay and allowances until restored to a full-duty status *for the purpose of making good lost time.*" (Emphasis added.) Captain Choi also quoted paragraph 030207.C, which states: "An enlisted member retained in the Military Service for the purpose of trial by court-martial is not entitled to pay for any period after expiration of the enlistment unless acquitted or the charges are dismissed, or the member is retained in or restored to a full-duty status."[5] On 30 May 2003, CPT Choi further explained in another e-mail to appellant's TDC that although appellant's ETS date was adjusted based on lost time due to his AWOL,[6] appellant was "not restored for the purpose of making good lost time, he's just awaiting court-martial."

On 4 June 2003, appellant's TDC submitted a memorandum through the SJA addressed to the convening authority pursuant to Rule for Courts–Martial [hereinafter R.C.M.] 1105. The subject line included the phrase, "Request for Clemency." The R.C.M. 1105 submission did not cite any "legal errors," nor did it assert that CPT Choi was incorrect about appellant's entitlement to pay and allowances while pending trial. It did not mention that the failure to pay appellant violated Article 13, UCMJ. Instead, the R.C.M. 1105 submission urged the convening authority, *inter alia,* to disapprove the adjudged forfeitures "in the interests of justice and fundamental fairness." Appellant's TDC explained that appellant returned to his unit on 26 December 2002, lived in the barracks, performed normal military duties and was not paid for seventy-seven days until he went to trial on 13 March 2003. The R.C.M. 1105 submission concedes, "it appears that the applicable finance regulations will not allow for PFC Jauregui to be paid." The R.C.M. 1105 submission included copies of the four e-mails referenced in the preceding paragraph of this opinion.

On 15 June 2003, in the addendum to his post-trial recommendation, the SJA forwarded the TDC's R.C.M. 1105 submission, with enclosures, to the convening authority. The SJA recommended approval of the adjudged sentence without mentioning finance's failure to pay appellant. The record contains no evidence of any action by anyone, over the next six months, to ensure that appellant was paid for the seventy-seven days he performed military duties while awaiting trial. The record contains no evidence that appellant received pay and allowances for the first fourteen days he was confined, or thereafter, less the adjudged forfeiture of $767 pay per month until he went on excess leave.

---

(C.A.A.F.1999) (summary disposition) (discussing prerequisites for appellate intervention because of illegal imposition of forfeitures).

With respect to appellant's case, we do not know whether appellant's TDC was aware that finance refused to pay appellant before trial because of his pending trial. As such, we have no basis for concluding that appellant's TDC erred by not seeking relief at trial on appellant's behalf. *Cf. United States v. Lewis,* 42 M.J. 1, 5 (C.A.A.F. 1995) (listing steps to be taken when ineffective assistance of counsel is alleged).

5. Interim Change 23–03 (28 May 2003) to the DoDFMR contains the same two provisions that are now paragraphs 010302.G.2 and 010302.G.3, respectively. Interim Change 23–03 is available at http://www.dod.mil/comptroller/fmr/07a/07AIC23–03.pdf.

6. In general, an accused is not entitled to pay and allowances if confined after ETS, unless subsequently acquitted. *Compare* DoDFMR, para. 10302.G.3 (IC 23–03), *with* DoDFMR, para. 10302.G.6, G.8 (IC 23–03).

## Appellate Litigation

On 16 December 2003, the Senior Associate Counsel, Office of General Counsel, DFAS, issued an opinion responding to our court order, stating that appellant was entitled to pay and allowances from 26 December 2002 until 13 March 2003 (Appendix). Quoting 54 Comp. Gen. 862, 867, 1975 U.S. Comp. Gen. LEXIS 173, *13 (1975), his opinion explained that appellant was so entitled because he was not in pretrial confinement, and he was " 'assigned to perform useful and productive duties (as opposed to duties prescribed by regulation for confinement facilities) on a full-time basis, so long as such duties [were] not inconsistent with his grade and years of service.' " *See* DoDFMR, para. 010302.G.2 (IC 23–03).[7]

## DISCUSSION

### Application of Article 13, UCMJ

■ Article 13, UCMJ, provides, "No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him...." Article 13, UCMJ, proscribes purposefully imposing punishment upon an accused before adjudication of guilt or innocence.[8] Three factors are relevant to our " 'judicial calculus' "[9] in determining if there has been an Article 13 violation: (1) intent to punish;[10] (2) failure to follow pertinent regulations;[11] and (3) whether conditions imposed are " 'arbitrary or purposeless,' " and " 'not reasonably relat-

ed to a legitimate' " government objective, allowing a permissive inference of improper punishment. *McCarthy,* 47 M.J. at 167 (citations omitted).

Although CPT Choi did not intend to punish appellant, his determination of nonpayment was inconsistent with precedent, and he misinterpreted DFAS regulations. The government's failure to pay appellant while he was performing military duties because he was "just awaiting court-martial" was not reasonably related to a legitimate government objective. Having made these observations, we nonetheless decline to grant relief for a violation of Article 13, UCMJ.

### Waiver

■ Complaints of unlawful pretrial punishment in violation of Article 13, UCMJ, are ordinarily waived if made for the first time on appeal.[12] Approximately four months after appellant's sentence was adjudged, our superior court held in *Inong* that "once this opinion becomes final, failure at trial to seek sentence relief for violations of Article 13 waives that issue on appeal absent plain error."[13]

We are cognizant of appellant's unrebutted assertion that his counsel advised him that the pay problem could be corrected after his trial. In *United States v. Fricke,* 53 M.J. 149, 154 (C.A.A.F.2000), our superior court highlighted the importance of affirmative waiver of this issue at trial. Nonetheless, the *Fricke* court found no waiver, citing

7. Appellant was also entitled to pay and allowances after his sentence was adjudged, subject to automatic forfeitures while confined, pursuant to Articles 57(a)(1)(A), and 58b(a)(1), UCMJ, 10 U.S.C. §§ 857(a)(1)(A), and 858b(a)(1). *See* 1975 U.S. Comp. Gen. LEXIS at *10. Any remaining adjudged forfeitures after appellant completed his confinement should not have been given effect until the convening authority took his initial action, which occurred after approval of appellant's excess leave. Once appellant went on excess leave, he was not entitled to pay or allowances. *See United States v. Bodkins,* 59 M.J. 634, 637, n. 7 (Army Ct.Crim.App.2003), *pet. granted on other grounds,* 59 M.J. 400 (C.A.A.F.2004).

8. *United States v. McCarthy,* 47 M.J. 162, 165 (C.A.A.F.1997); *see Coyle v. Commander, 21st Theater Army Area Command,* 47 M.J. 626, 630 (Army Ct.Crim.App.1997).

9. *United States v. Mosby,* 56 M.J. 309, 310 (C.A.A.F.2002) (citations omitted).

10. *Id.*

11. *Cf. McCarthy,* 47 M.J. at 166.

12. *See United States v. Huffman,* 40 M.J. 225, 227 (C.M.A.1994) (requiring affirmative waiver of Article 13, UCMJ), *overruled prospectively by United States v. Inong,* 58 M.J. 460, 464 (C.A.A.F.2003) (concluding that *"Huffman's* affirmative waiver rule is unworkable").

13. *Inong,* 58 M.J. at 465; *see United States v. Fogarty,* 35 M.J. 885, 888 (A.C.M.R.1992) (holding that failure to raise issue of pretrial punishment at trial "usually" waives issue on appeal); R.C.M. 905(e), 907(b)(2)(D)(iv).

Lieutenant Commander Fricke's unrebutted assertion that he made no motion for credit on advice of counsel that the issue of unlawful pretrial punishment could be raised on appeal. *Id.* at 154 n. 5. Appellant's case, however, is different from *Fricke* because both appellant and his TDC affirmatively waived the issue of punishment in violation of Article 13, UCMJ, on the record.[14]

 There is a strong preference for applying waiver when all parties affirmatively state on the record that there is no issue of unlawful pretrial punishment.[15] In sum, appellate defense counsel have not provided sufficient justification to overcome appellant and his TDC's express waiver at trial of the unlawful pretrial punishment issue; nor have they established that the error was "plain." *See United States v. Chapa*, 57 M.J. 140, 143 (C.A.A.F.2002) (citing *United States v. Powell*, 49 M.J. 460, 463–64 (C.A.A.F.1998)).

## Post-trial Opportunity for Corrective Action

 Appellant's TDC submitted the pay problem to the SJA and convening authority as part of his R.C.M. 1105 submission, without characterizing finance's decision as legal error. Additionally, appellant's TDC presented no evidence that finance would pay appellant anything, even if the convening authority granted the TDC's request to disapprove appellant's adjudged forfeitures.

Thus, the SJA was not required to give an opinion concerning the necessity for corrective action.[16]

The parties agree that finance erroneously failed to pay appellant because while appellant was charged with AWOL and pending court-martial, he performed military duties for seventy-seven days. We have "the unique power to determine for [ourselves], from the existing record, what the facts of a case are." *United States v. King*, 58 M.J. 110, 114 (C.A.A.F.2003) (citing Article 66(c), UCMJ). We will eliminate any prejudice to appellant by exercising our authority under Article 66(c), UCMJ, to approve only that part of the sentence which we determine should be approved. *See United States v. Cook*, 46 M.J. 37, 40 (C.A.A.F.1997). We will take the erroneous failure to pay appellant into consideration in our reassessment of the sentence.[17]

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a bad-conduct discharge, forfeiture of $500.00 pay per month for four months, and reduction to Private E1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored

14. We do not recommend that military judges inquire beyond the current practice of asking TDC *and* the accused, individually, if there are any issues regarding pretrial punishment under Article 13, UCMJ. *See* Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], ch. 2, § IV, at 32 (15 Sept. 2002); *United States v. Singleton*, 59 M.J. 618, 622 n. 10 (Army Ct.Crim.App.2003). Military judges are not required to and should not routinely ask an accused whether he is being properly paid. *See* Benchbook, ch. 2, § IV, at 32; *Singleton*, 59 M.J. at 622 n. 10.

15. *See United States v. Combs*, 47 M.J. 330, 333–37 (C.A.A.F.1997) (addressing affirmative waiver in the majority, concurring, and dissenting opinions); *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F.1997) (highlighting the importance of appellant's statements at trial in resolving issues under the fifth *Ginn* principle); *Huffman*, 40 M.J. at 229 (Crawford, J., dissenting in part and concurring in the result) (stating that inquiry by

the military judge regarding unlawful pretrial punishment would obviate such post-trial claims); *United States v. King*, 58 M.J. 110, 116 (C.A.A.F.2003) (Failure to seek "credit for pretrial restriction tantamount to confinement will constitute waiver of that issue [on appeal] in the absence of plain error.").

16. *See United States v. Catrett*, 55 M.J. 400, 407–08 (C.A.A.F.2001) (citing R.C.M. 1106(d)(4)).

17. *Cf. United States v. Wellington*, 58 M.J. 420, 427 (C.A.A.F.2003) (holding misstatement about Sergeant Wellington's disciplinary record and omission of pretrial restraint in SJA's recommendation was plain error); *United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F.2002) (concluding that courts of criminal appeals may reduce the sentence to moot issues pertaining to post-trial processing errors) (citing *United States v. Higbie*, 12 U.S.C.M.A. 298, 30 C.M.R. 298, 1961 WL 4441 (1961)).

as mandated by Article 75(a), UCMJ, 10 U.S.C. § 875(a).[18]

Senior Judge HARVEY and Judge SCHENCK concur.

## APPENDIX

### DEFENSE FINANCE AND ACCOUNTING SERVICE

### INDIANAPOLIS

8899 EAST 56TH STREET

INDIANAPOLIS, INDIANA 46249

DFAS–GA/IN December 16, 2003

MEMORANDUM FOR COMMANDER, U.S. ARMY LEGAL SERVICES AGENCY GOVERNMENT, APPELLATE DIVISION (JALS–GA)

SUBJECT: Statement in Response to November 17, 2003 Order, *United States v. Fernando Jauregui*, Army No. 20030289

This memorandum is written in response to the November 17, 2003, Order from the Army Court of Criminal Appeals in the case of *United States v. Fernando Jauregui*. For the reasons discussed below, it is our opinion that PVT Jauregui is entitled to pay and allowances for the period December 26, 2002, the date he was returned to his unit, until March 13, 2003, the date of his court-martial trial.

Section 972(a) of Title 10, United States Code, provides that an enlisted member who is absent from duty for more than 1 day without proper authority (often referred to as "AWOL") is liable, after his return to full duty, to serve for a period that, when added to the period that he served before his absence from duty, amounts to the term for which he was enlisted. This statutory provision is implemented in paragraph 010302 of the Department of Defense Financial Management Regulation (DoDFMR), Vol. 7A. As relevant to this case, paragraph 010302.G.2 of the DoDFMR, Vol. 7A, provides that:

An absentee who surrenders or is apprehended after a term of enlistment has expired is not entitled to pay and allowances until restored to a full-duty status for the purpose of making good lost time. While held in retention, a member may be assigned duties as prescribed by regulations governing detained prisoners without being returned to full duty status.

The courts and the Comptroller General have recognized that a member who is AWOL and is returned to military control may be required to perform some duties without becoming entitled to pay and allowances if the member has not been restored to a full-duty status. *See, e.g., United States v. Anderson*, 43 C.M.R. 960, 1971 WL 12914 (AFCMR 1971); Comp. Gen. B–173065, July 7, 1971.

Generally, "for the purposes of 10 U.S.C. 972, 'full duty' is attained when a member, not in confinement, is assigned to perform useful and productive duties (as opposed to duties prescribed by regulation for confinement facilities) on a full-time basis, so long as such duties are not inconsistent with his grade and years of service." 54 Comp. Gen. 862, 867 (1975). The attached statement from PVT Jauregui's commander, CPT Gonzalez, indicates that following PVT Jauregui's apprehension, his status was changed on December 26, 2002, from Dropped From Rolls (DFR) to Present for Duty, and he was returned to A Company, 65th Engineer Battalion (now redesignated as the 73rd Engineer Company). Thereafter, it appears that he lived in the barracks and performed military duties with his unit until he went to trial on March 13, 2003. There is nothing in the information provided to indicate that the military duties performed by PVT Jauregui during this period were not commensurate with his grade and years of service.

When a member, who is AWOL, is returned to military control after the expiration of his term of enlistment and is assigned to his former organization or another similar unit for the purpose of performing the full duties of an enlisted member of his grade and military occupational specialty, the mem-

---

**18.** Appellant completed his sentence to 100 days confinement. We are not affirming any confinement to ensure that automatic forfeitures applied under Article 58b(a)(1), UCMJ, do not reduce the forfeiture relief we direct in this opinion.

ber should be considered to be returned to "full duty." *See* Comp. Gen. B–173065, July 7, 1971. Consequently, we conclude that after PVT Jauregui's return to military control, he is entitled to pay and allowances for the period he served with his unit prior to his court-martial trial, pursuant to the provisions of DoDFMR, Vol. 7A, paragraph 010302.G.2.

Frank A. Baldwin
Senior Associate Counsel
Office of General Counsel

Attachments:

Memorandum from CPT Gonzales dated May 28, 2003

Army Court of Criminal Appeals Order dated November 17, 2003