UNITED STATES, Appellee,

v.

Private First Class David L. ADNEY, United States Army, Appellant.

ARMY 20030048.

U.S. Army Court of Criminal Appeals.

29 April 2005.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Major Darrel J. Vandeveld, JA (on brief).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Mark L. Johnson, JA; Major Natalie A. Kolb, JA; Captain Edward E. Wiggers, JA (on brief).

Before HARVEY, CLEVENGER, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT

SCHENCK, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of carnal knowledge, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for fourteen months, and reduction to Private E1, but disapproved the adjudged forfeiture of all pay and allowances. This case is before the court for review under Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Appellate defense counsel assert two assignments of error. One merits discussion and relief. We agree with appellate defense counsel that the post-trial documentation is ambiguous regarding whether the convening authority waived appellant's automatic forfeitures.[1] Because the parties agree that the convening authority intended to waive automatic forfeitures at initial action for six

---

1. "Automatic" forfeitures are also known as "mandatory" forfeitures. *See United States v.*  *Emminizer,* 56 M.J. 441, 442 (C.A.A.F.2002).

months, we will implement the convening authority's intent in our decretal paragraph.[2]

## FACTS

On 16 January 2003, the day appellant's sentence was adjudged, his trial defense counsel submitted a written request to "defer [appellant's] adjudged forfeitures ... until final action" in accordance with Article 57(a)(2), UCMJ, 10 U.S.C. § 857(a)(2). That defense request also asked that the convening authority "waive automatic forfeitures for a period of six (6) months and direct [payment to Mrs. Jennifer Adney]" in accordance with Article 58b(b), UCMJ, 10 U.S.C. § 858b(b).[3]

In a 24 January 2003 memorandum response to trial defense counsel's request, the convening authority wrote:

1. I have received your request, dated 16 January 2003, to *waive* the *adjudged* forfeitures announced as part of PFC Adney's court-martial sentence until I take final action on this case and to *waive* the *automatic* forfeitures under Article 58b(b) for six (6) months.

2. I have considered the factors contained in both [Rule for Courts–Martial [hereinafter R.C.M.]] 1101(c)(3) and (d)(2). Your request to *defer* the *adjudged* forfeitures is granted. Additionally, I direct that execution of the *automatic* forfeitures be *deferred* until I take final action on this case, but not to exceed a period of six (6) months from the effective date of the sentence pursuant to Article 57(a).

3. Pursuant to Article 58b(b), all pay and allowances will be *directed to Jennifer Adney.*

(Emphasis added). The Chief of Military Justice, in a 21 February 2003 memorandum to the finance office, forwarded the convening authority's memorandum and declared that "[t]he convening authority *deferred* execution of the forfeitures on 24 January 2003 ... and *directed pay and allowances* to PV1 Adney's spouse" (emphasis added).

In a 4 April 2003 defense submission made pursuant to R.C.M. 1105, appellant's trial defense counsel asserted that the convening authority already approved the *deferment* of appellant's adjudged forfeitures, directing payment to Mrs. Jennifer Adney. Therein, trial defense counsel again requested that the convening authority "waive the forfeiture of [appellant's] pay and allowances at ... Action for a period of six months, directing that such pay and allowances be remitted to his wife, Mrs. Jennifer Adney" because Mrs. Adney and her infant daughter's financial situation had worsened. The defense submission did not raise any issue with respect to the executed deferred forfeitures.

The staff judge advocate's (SJA) post-trial recommendation (SJAR) and the addendum to the SJAR do not mention the convening authority's 24 January 2003 memorandum or any of the prior actions taken with respect to appellant's adjudged and automatic forfeitures. The addendum lists the R.C.M. 1105 request for waiver of forfeitures as an enclosure. The SJA recommended that the convening authority approve the sentence as adjudged. In his initial action dated 2 May 2003, the convening authority disapproved adjudged forfeitures, but otherwise approved the sentence as adjudged.[4]

---

2. We will also correct the promulgating order to accurately reflect "Article 120" for The Charge and "16 January 2003" as the date the sentence was adjudged.

3. Because he was in confinement, appellant's adjudged and automatic forfeitures became effective fourteen days after his sentence was adjudged unless earlier deferred or waived. *See* UCMJ arts. 57(a)(1), 58b(a)(1), and 58b(b). Appellant was not placed on excess leave until approximately March 2004, more than six months after initial action on 2 May 2003; and the expiration of appellant's term of service is not until 29 May 2005. *See* Army Reg. 600–8–10, Personnel Absences: Leaves and Passes, para. 5–19e & tbl. 5–11, Step 6 (31 Jul. 2003) (discussing payment of pay and allowances for accrued leave and the absence of pay and allowances while on excess leave). *See also* Dep't of Def. Dir. 7000.14R, Department of Defense Financial Management Regulation, Vol. 7A: Military Pay Policy and Procedures—Active Duty and Reserve Pay, Interim Change 23–03, para. 010301.F.1. (28 May 2003) (available at http://www.dod.mil/comptroller/fmr/07a/07AIC23–03.pdf). Therefore, appellant is eligible to receive pay and allowances for the six-month period at issue.

4. Appellant's pretrial agreement with the convening authority did not contain any provision limiting forfeitures.

Appellate counsel agree, in addition to granting a deferment of all forfeitures, the convening authority granted a waiver of automatic forfeitures for six months beginning 2 May 2003. Because the parties have not raised the issue of remuneration with respect to the execution of deferred forfeitures, we herein limit our analysis to the execution of the waiver of automatic forfeitures.

## DISCUSSION

There are two distinct types of forfeiture of pay and allowances. "The first category—adjudged forfeitures—involves forfeitures that may be included in a sentence adjudged at a court-martial ... [T]he second category—[automatic] forfeitures—are not part of the court-martial sentence, but apply as a collateral consequence of specified sentences ...." *Emminizer*, 56 M.J. at 442.

A convening authority may *defer adjudged* forfeitures until action and then at action may approve, disapprove, suspend, or modify adjudged forfeitures. *See id.* at 442–45; *see also* UCMJ arts. 57 and 60, 10 U.S.C. §§ 857 and 860. Unlike Article 58b(b), UCMJ, however, Article 57, UCMJ, does not contain any provision for the convening authority to direct payment to dependents when deferring forfeitures.[5] In appellant's case, the convening authority's 24 January 2003 memorandum before initial action properly executed a deferment of all forfeitures until action;[6] however, the Chief of Military Justice stated that payment of the deferred forfeitures would go to appellant's spouse.

■■■ A convening authority's discretion over *automatic* forfeitures is limited to: (1) *deferring* all or part of the automatic forfeitures for any period of time until initial action; and/or (2) before or after action, *waiving* all or part of the automatic forfeitures for six months or less, directing payment to an accused's dependents. *Emminizer*, 56 M.J. at 443–45. If an accused is still subject to

automatic forfeitures at initial action, and the convening authority intends to waive automatic forfeitures for the purpose of directing payment of automatic forfeitures to a dependent, the convening authority cannot approve an adjudged forfeiture of all pay and allowances. *See id.* at 445; *United States v. La-Jaunie*, 60 M.J. 280, 281 (C.A.A.F.2004).

■■■ In appellant's case, appellant was still subject to automatic forfeitures at initial action because he remained in confinement. *See* note 3, *supra*. After reviewing the convening authority's 24 January 2003 memorandum, together with the convening authority's disapproval of the adjudged forfeitures at initial action, we find that the convening authority's clear intent was to execute a post-action, six-month waiver of automatic forfeitures, directing payment to appellant's wife. Moreover, both appellate defense and government counsel concur that this was the convening authority's intent. *See United States v. Singleton*, 60 M.J. 409, 413 (C.A.A.F.2005); *United States v. Fagan*, 59 M.J. 238, 241–44 (C.A.A.F.2004).

The key factual question that remains is whether Defense Finance and Accounting Services (DFAS) ever executed the post-action, six-month waiver of appellant's automatic forfeitures granted by the convening authority. Appellate defense counsel "contact[ed] appellant's spouse, who stated that she did not receive any of appellant's pay or allowances after the appellant entered confinement." Appellate government counsel do not challenge the assertion that Mrs. Adney received no payment; instead, they argue that although appellant's wife may not have been paid due to a failure on the part of the DFAS, the waiver was executed. In light of the unrebutted assertion of nonpayment, and in the absence of documentary evidence which might otherwise show DFAS executed the waiver, the benefit of the doubt inures to appellant.[7]

---

5. The convening authority may nevertheless accept an accused's offer in a pretrial agreement to provide deferred forfeitures to his/her dependents in return for the deferment of forfeitures. Alternatively, the convening authority may approve a post-trial, pre-action defense request to defer forfeitures with payment directed to dependents.

6. The convening authority did not record his deferral decision in his initial action as required under R.C.M. 1101(c)(4).

7. We disagree with our dissenting colleague that a hearing to determine the facts is necessary. The question regarding payment is not necessary to our analysis at this stage. Appellate defense

Under Article 66(c), UCMJ, we "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." "[A] Court of Criminal Appeals has broad authority under Article 66(c) to review and modify sentences" in order to protect an accused. *United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002) (citations omitted). This authority to review and modify sentences includes taking necessary and appropriate actions in aid of our jurisdiction under Article 66(c). *Cf.* 28 U.S.C. § 1651.

All parties agree that the convening authority intended to waive appellant's automatic forfeitures for six months after initial action. *See Singleton*, 60 M.J. at 413; *Fagan*, 59 M.J. at 241–44. Our superior court has stated that automatic forfeitures are punishment. *United States v. Gorski*, 47 M.J. 370, 373 (C.A.A.F.1997). Therefore, while automatic forfeitures "apply as a collateral consequence of specified sentences," [8] actions taken by the convening authority that affect punishments are within our sentence appropriateness review under Article 66(c), UCMJ. Accordingly, we will implement the convening authority's intent. *See generally United States v. Cox*, 22 U.S.C.M.A. 69, 46 C.M.R. 69, 1972 WL 14393 (1972) (affirming Court of Military Review's decision to suspend execution of discharge according to pretrial agreement).

Furthermore, "judicial economy demands that we cure the error ... rather than burdening SJAs and convening authorities with execution and review of new actions to cure trivial errors ... We have not hesitated in the past to cure errors arising from imposition of forfeitures pursuant to Article 58b," and will not hesitate to do so now. *LaJaunie*, 60 M.J. at 282 (Crawford, C.J., dissenting). "[I]t would be a classic waste of resources for an appellate court to remand the case for consideration of [a] clearly meritorious error, rather than simply to redress the

wrong, right then and there." *United States v. Welker*, 44 M.J. 85, 91 (C.A.A.F.1996) (Everett, S.J., dissenting).

The findings of guilty and sentence are affirmed. To the extent that DFAS did not execute the convening authority's waiver for the six months following initial action, we retroactively order execution of the waiver to begin at the convening authority's initial action, 2 May 2003, and continue for a period of six months until 2 November 2003, with payment of all of appellant's pay and allowances to Mrs. Jennifer Adney.

Senior Judge HARVEY concurs.

CLEVENGER, Judge, dissenting.

I dissent.

In a 24 January 2003 memorandum, "SUBJECT: Waiver of Forfeitures, *U.S. v. Adney*," the convening authority, Brigadier General Kamiya, wrote:

1. I have received your request, dated 16 January 2003, to waive the adjudged forfeitures announced as part of PFC Adney's court martial sentence until I take final action on this case and to waive the automatic forfeitures under Article 58b(b) for six (6) months.

2. I have considered the factors contained in both RCM 1101(c)(3) and (d)(2). Your request to defer the adjudged forfeitures is granted. Additionally, I direct that execution of the automatic forfeitures be deferred until I take final action on this case, but not to exceed a period of six (6) months from the effective date of the sentence pursuant to Article 57(a).

3. Pursuant to Article 58b(b), all pay and allowances will be directed to Jennifer Adney.

There is no significant ambiguity in this directive. Execution of the adjudged forfeitures is deferred. *See* Article 57(a)(2), Uniform Code of Military Justice [hereinafter UCMJ]. Execution of the automatic forfeitures is deferred until the convening authori-

---

counsel can assist appellant and his spouse in filing a claim with DFAS along with this opinion to obtain appropriate remuneration to the extent that automatic forfeitures were not waived for six

months. *See United States v. Jauregui*, 60 M.J. 885, 886 (Army Ct.Crim.App.2004).

**8.** *Emminizer*, 56 M.J. at 442.

ty takes action on the case, but not longer than six months past 16 January 2003. *See* UCMJ art. 58b(a)(1). When that deferment ends, the automatic forfeitures will be waived pursuant to Article 58b(b), UCMJ, and paid to appellant's spouse. The only potential ambiguity is the length of time the forfeitures will be waived and, in the context of appellant's request for a six-month waiver period and the convening authority's memorandum, a waiver for the maximum period of six months for the benefit of appellant's spouse is sufficiently clear.[1]

The convening authority failed to put his deferral decision in his initial promulgating action as required by R.C.M. 1101(c)(4). The waiver decision was not reported in the action either. While that is not a legal requirement, a convening authority who wants his or her orders carried out would be wise to ensure that this document, the initial court-martial promulgating order, mandated by regulation to be distributed to a servicing finance office,[2] recites the details of the granted waiver. *See* Army Reg. 27–10, para. 12–7(b)(6).

Now, more than two years later, the judges of this court do not know if the convening authority's directions regarding the execution of appellant's sentence were obeyed. The government's tactical concession as to their preferred option for a remedy to be granted by this court is not satisfactory

to prove the necessary facts. Appellant's detailed trial defense counsel did not clearly state in the R.C.M. 1105 submission whether or not the deferral orders for the adjudged and automatic forfeitures were obeyed between 24 January 2003, the date of the convening authority's direction, and 4 April 2003, the date of the R.C.M. 1105 submission. But appellate defense counsel include an averment in their pleadings to the effect that appellant's spouse never received any of the monetary benefits that would be expected as a result of government compliance with the convening authority's deferral or waiver directions.

I think this court's first duty in this case is to ascertain the relevant facts. If the convening authority's directions to defer the adjudged and automatic forfeitures pursuant to Articles 57(a) and 58b(a)(1), UCMJ, were not obeyed, then there is almost certainly a significant, prejudicial error regarding the execution of the sentence. Moreover, the proper execution of any automatic forfeiture, and the waiver thereof, as granted here, is material to our review of the overall appropriateness of an approved sentence. If a convening authority provides monetary support to an appellant's dependents by modifying the economic impact of an adjudged sentence, it may affect our view of what additional economic impact may be appropriate from the

---

1. The majority apparently reaches this same conclusion but by the remedy they order the majority fails to adequately account for the prejudicial effect of the government's sentence execution process upon appellant. Appellant's deferment and waiver request is reasonably clear, correct, and direct. But while the request's overall direction is sufficiently clear, the convening authority's memorandum, and a subsequent interpretation of it by the Chief of Military Justice, demonstrate deplorably sloppy misuse of technical legal terms such as an action being "final" rather than "initial," the distinctions between "defer" and "waive," and "adjudged" versus "automatic" or "mandatory" forfeitures. Such poor legal practice by the government's lawyers in the post-trial correspondence contributes to the potential for confusion in this case. Appellant's detailed trial defense counsel added to the potential for confusion when he submitted Rule for Courts–Martial [hereinafter R.C.M.] 1105 matters on 4 April 2003 that read as if the convening authority had not already approved and directed the waiver of automatic forfeitures

initially requested on 16 January and approved on 24 January 2003. It does not help that neither the President in the current Manual for Courts–Martial, nor the Secretary of the Army in the current version of Army Regulation 27–10, Legal Services: Military Justice (6 Sept. 2002) [hereinafter "Army Reg. 27–10"], have mandated a required process to reflect a soldier's request for and the convening authority's decision on a waiver of automatic forfeitures under Article 58b, UCMJ. Our court has unnecessarily added to the confusion by affirmatively noting that the decision need not be in writing or notice thereof be given to the soldier making the request. *United States v. Zimmer*, 56 M.J. 869, 872 n. 4 (Army Ct.Crim.App.2002).

2. Court-martial promulgating orders are "substantiating documents" for finance pay actions. Army Reg. 37–104–4, Financial Administration: Military Pay and Allowances Policy and Procedures—Active Component, para. 27–2 (30 Sept. 1994).

remaining portions of the sentence under our review.

My colleagues in the majority, rather than using our well-known powers to determine the relevant facts by ordering a *DuBay*[3] hearing or ordering affidavits from the parties, or even returning the case to the convening authority for a new recommendation and action, elect to fashion a novel remedy. The majority orders execution of the waiver of the automatic forfeitures for six months as if we possessed such a power under Article 66(c), UCMJ.[4] In effect, we elect ourselves to the position of reviewing clerk for finance office compliance with convening authority orders.[5]

Judicial economy is a legitimate value, but issuing unreviewable orders in matters that exceed our limited statutory authority is a futile act of expedience, not judicial economy.[6] The rule of law obliges the government to perform its duty to the appellant. Where the record of trial does not support proof of compliance with the convening authority's directions concerning the execution of the sentence, and the potential failure is materially prejudicial to appellant's interests, then we must resolve, not assume, the facts or remand to the appropriate lower level with the necessary specific directions to the convening authority to determine the facts and take a new action.[7]

Accordingly, I dissent.

---

3. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (C.M.A.1967).

4. But the majority fails to address the issue raised by appellant's unchallenged pleadings, the allegedly unexecuted deferral of adjudged forfeitures as ordered by the convening authority. Furthermore, I take strong exception to the majority's suggestion that a convening authority can direct, or lawfully agree to direct, deferred adjudged forfeitures to a sentenced soldier's legal dependents. I suggest that any convening authority or staff judge advocate contemplating that course of action should first consider how any future disputes will be resolved between the parties: the government, the soldier, and the legal dependents. They should also specifically consider what forum would have jurisdiction, by what process the matter would be raised, under what standards it would be resolved, and how any factual determination would be enforced.

5. The majority decision also ignores that oft-quoted pronunciamento in *United States v. Paz–Medina*, 56 M.J. 501, 503 n. 6 (Army Ct.Crim. App.2001), that "[s]oldiers on excess leave are not entitled to pay and allowances." Appellant would have completed his sentence to confinement not later than 16 March 2004 and been, presumably, placed on involuntary excess leave at about that time or before. Thus, if military finance authorities determine that appellant is not eligible to receive any pay and allowances due to his excess leave status, or that he is beyond his expiration of term of service date, or that his private income and earnings while on excess leave exceed his military pay entitlements,

their refusal to pay appellant would make the majority's remedy meaningless.

6. The majority's reliance on a dissenting opinion by one judge of our superior court in *United States v. LaJaunie*, 60 M.J. 280 (C.A.A.F.2004), is hardly a compelling view of judicial economy. More importantly, requiring convening authorities and staff judge advocates to act in accordance with the rules of military justice laid out by Congress and the President cannot properly be seen as "burdening" them. That is our duty and their duty. The convening authority's powers in the military justice system flow from the concomitant role of being a commander, responsible for ensuring good order and discipline, and obedience to his lawful directions. And the issue in *LaJaunie*, where the majority of that court remanded the record for a new action by the convening authority, likewise involved a potential error in the waiver of forfeitures decision by that convening authority.

7. In note 7, the majority remarks that appellant's detailed appellate defense counsel can assist appellant and his spouse "in filing a claim with DFAS along with this opinion to obtain appropriate remuneration." The necessity or appropriateness for any claim by appellant is unclear. Appellant's entitlement to any payment vis-à-vis his spouse's entitlement is certainly unresolved, but we know that the congressional intent behind Article 58b, UCMJ, was clearly not to provide payments to convicted soldiers but, rather, to provide payments directly to their legal dependents.